## United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Charles P. Kocoras | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 02 C 1951 | **DATE** | 7/12/2002 |
| **CASE TITLE** | Donovan et al vs. ABC-NACO, Inc. et al | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]

(2) ☐ Brief in support of motion due _____.

(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.

(4) ☐ Ruling/Hearing on _____ set for _____ at _____.

(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(7) ☐ Trial[set for/re-set for] on _____ at _____.

(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.

(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
☐ FRCP4(m) ☐ General Rule 21 ☐ FRCP41(a)(1) ☐ FRCP41(a)(2).

(10) ■ [Other docket entry] **ENTER MEMORANDUM OPINION:** Defendants' motion (Doc 18-1) to dismiss is granted and Plaintiffs' complaint is dismissed in its entirety.

(11) ■ [For further detail see order attached to the original minute order.]

| | | | | | |
|---|---|---|---|---|---|
| | No notices required, advised in open court. | | | | |
| | No notices required. | | number of notices | | **Document Number** |
| | Notices mailed by judge's staff. | | | | |
| | Notified counsel by telephone. | | JUL 15 2002 | | |
| ✓ | Docketing to mail notices. | | date docketed | | |
| ✓ | Mail AO 450 form. | | docketing deputy initials | | |
| | Copy to judge/magistrate judge. | | | | |
| | | courtroom deputy's initials | date mailed notice | | |
| | SCT | | | mailing deputy initials | |

CLERK, U.S. DISTRICT COURT

02 JUL 12 AM 10:32

FILED-ED 10

Date/time received in central Clerk's Office

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

JOHN L. DONOVAN and DONOVAN )
DEMOLITION, INC., )
)
           Plaintiffs, )
)
    vs. )        02 C 1951
)        (01 B 36484)
ABC-NACO INC., JOSEPH A. SEHER, )
VAUGHN W. MAKARY, JOHN W. WAITE, )
STEVEN M. YODER, DONALD W. DUVAL, )
RICHARD A. DREXLER, JEAN-PIERRE M. )
ERGAS, JAMES E. MARTIN, GEORGE W. )
PECK IV, and WILLARD H. THOMPSON, )
)
           Defendants. )

## MEMORANDUM OPINION

CHARLES P. KOCORAS, District Judge:

Before the court is Defendants' Joseph A. Seher ("Seher"), Vaughn Makary ("Makary"),

Steven M. Yoder ("Yoder"), John Waite ("Waite"), Donald W. Duval ("Duval"), Richard A. Drexler

("Drexler"), Jean-Pierred M. Ergas ("Ergas"), James E. Martin ("Martin"), George W. Peck IV

("Peck"), and Willard H. Thompson ("Thompson"), (collectively herein referred to as "Defendants"),

Federal Rule of Civil Procedure Rule 12(b)(6) motion to dismiss the complaint of Plaintiffs John L.

Donovan ("Donovan") and Donovan Demolition, Inc.'s ("DDI"). For the reasons set forth below,

the motion is granted.

## BACKGROUND

The following facts are taken from the complaint and we accept them as true, as we must,

for the purposes of this motion. Brontkowski v. First Nat'l Bank of Cicero, 998 F.2d 459, 461 (7th



Cir. 1993). Donovan is the majority shareholder of DDI. DDI, until recently, was a leader in the business of explosion surface hardening of specialty manganese steel railroad track work. ABC-NACO, Inc. ("ABC-NACO") is in the business of manufacturing and selling products to the railroad industry. ABC-NACO is a publicly traded company on the NASDAQ stock exchange. Prior to April 2000, DDI was a closely-held Illinois corporation substantially owned by Donovan. At that time, Donovan was also the inventor and sole owner of intellectual property rights in certain improvements related to DDI's business, including an invention called the "Donovan Blast Chamber" as claimed in U.S. Patent No. 5,613,453 and reissued with broader claims as U.S. Re. 36,912, and as disclosed and claimed in numerous counterpart applications in foreign countries (the "Patent Rights"). ABC-NACO was among DDI's principal customers for railroad track work hardening services.

In the early months of 2000, ABC-NACO approached Donovan through its officer and agent, Yoder, about purchasing DDI's assets. ABC-NACO memorialized this intent in a written Letter of Intent dated March 10, 2000 and signed by Donovan and Yoder. This Letter of Intent was subsequently amended by an Amended Letter of Intent dated April 26, 2000. In the Amended Letter of Intent, ABC-NACO agreed to purchase DDI's assets for $12 million with payments in cash and/or ABC-NACO stock valued at a strike price of $15.00 per share. The closing date was June 1, 2000. The Amended Letter of Intent further provided ABC-NACO with a low-cost, long-term lease of the property occupied by DDI on Donovan's farm, a ten-year supply agreement for sheet explosives from Donovan's separate company, Donovan Commercial Industries, Inc., a non-competition agreement from Donovan, and three-year employment contracts for Donovan and certain other DDI employees. Like the original Letter of Intent, the Amended Letter of Intent was signed by Yoder and Donovan.

- 2 -

From April 26, 2000 through June 23, 2000, further negotiations about the proposed asset sale took place between the parties telephonically, by telefax, mail, and personal meetings at DDI's offices. These negotiations culminated in an Asset Purchase Agreement dated June 23, 2000. The Asset Purchase Agreement contained the following key terms: (1) DDI would sell all of its assets to ABC-NACO in return for 500,000 shares of ABC-NACO's capital stock; (2) Donovan would give ABC-NACO a 100-year lease for DDI's business premises for a total sum of $1.00 per year, with ABC-NACO paying only maintenance and real estate taxes; (3) Donovan would convey his Patent Rights to ABC-NACO in return for the payment of $4.4 million, payable $1.9 million at closing, $1.25 million on January 1, 2001, and $1.25 million on January 1, 2002; (4) Donovan would execute a five-year covenant not to compete in return for the payment at closing of $100,000, for a total payment of $2 million; (5) ABC-NACO would enter five-year employment agreements with Donovan and three of his key employees; (6) ABC-NACO would grant back to Donovan a paid-up, royalty-free, fully assignable license to use the Patent Rights in all fields having to do with the destruction of explosive, chemical, or biological weapons; (7) the closing would take place on June 23, 2000.

The parties closed the transaction on the designated date. At the closing, Donovan received $1.9 million as the initial payment for the Patent Rights and $100,000 for the covenant not to compete, and a note for the remaining $2.5 million providing payment as agreed. Donovan also received an assignable exclusive license to use the Patent Rights for munitions destruction purposes only, and 500,000 shares of ABC-NACO common stock. ABC-NACO received title to all of DDI's assets, all the Patent Rights, a 100-year $1.00 per year lease for DDI's business premises, and a long-term sheets explosives supply agreement from Donovan Commercial Industries. For reasons not

important here, Donovan was required by the United States Patent and Trademark Office to execute, on September 10, 2001, a supplemental patent assignment to ABC-NACO of certain of his Patent Rights, for which he received the exclusive license.

On or about October 17, 2001, the NASDAQ stock market stopped all stock trading with ABC-NACO. Shortly thereafter, ABC-NACO filed a petition under Chapter 11 in the United States Bankruptcy Court for the Northern District of Illinois, Eastern Division; ABC-NACO is the principal debtor in Case No. 01-B-36484. Plaintiffs are unsecured creditors of ABC-NACO. Legal title for all of Donovan's inventions and patent rights relating to the Donovan Blast Chamber, for which he has not yet been fully paid, became part of ABC-NACO's bankruptcy estate. By an order dated December 11, 2001, the sale of these assets under 11 U.S.C. § 363(f) was approved to the successful bidder, TCF Railco, Inc., for $75 million. The secured claims of ABC-NACO's bank lenders total about $176 million. Plaintiffs contend that, after all relevant bankruptcy proceedings, ABC-NACO will be unable to pay its secured creditors. Plaintiffs seek relief via the lawsuit they filed before this court.

Plaintiffs' complaint is based on allegations that Defendants, in their capacity as directors, officers, and agents of ABC-NACO, made certain affirmative misrepresentations and material omissions throughout and after the three-month long negotiations between Plaintiffs and ABC-NACO. Plaintiffs complain that these alleged affirmative representations and omissions induced them into agreeing to the transaction. The alleged affirmative misrepresentations are as follows. First, Plaintiffs allege that Makary and Seher, prior to the execution of the June 23, 2000 Agreement, represented to Donovan and others at DDI that DDI would be the "golden egg" of the Rail Systems Division, giving customers "one stop shopping" for their specialty track work, which would raise

the market price of ABC-NACO's stock which was at that time in decline. Makary and Seher allegedly made these representations telephonically and in person. Makary and Seher also, at the same time and in the same manner, represented ABC-NACO would place the sum of $2.5 million that would be due to Donovan in return for the Patent Rights "in escrow" to assure that all remaining payments would be made when due starting January 1, 2001. Waite, also prior to execution of the June 23, 2000 Agreement, similarly represented to Donovan in one or more telephone conversations that ABC-NACO would place $2.5 million "in escrow" to assure that the payments for the Patent Rights would be made. After the June 23, 2000 closing, Waite represented to Donovan in at least one telephone conversation that such sum had in fact been placed in "escrow" pursuant to the oral representations of Makary, Seher, and Waite.

Plaintiffs further allege that during these negotiations Defendants made certain material omissions of fact. Plaintiffs allege that ABC-NACO was at that time in violation of one or more covenants in loan agreements with the consortium of banks from which it had already borrowed in excess of $150 million, and that it could not reasonably expect to pay Donovan his final $2.5 million payment on and after January 1, 2001. Plaintiffs further allege that ABC-NACO was prevented by its loan agreements with its banks from placing $2.5million into an escrow account as promised by Defendants. Also, should ABC-NACO actually pay Donovan the remaining $2.5 million due under the Asset Purchase Agreement, that ABC-NACO reasonably expected to render itself insolvent and unable to pay its debts as they accrued. Finally, that ABC-NACO's business expectations were such that the market price of its stock would likely fall to less than half of the $15 per share "strike" price represented as reasonable by Seher.

Plaintiff initially filed a complaint naming as Defendants all the current Defendants and ABC-NACO. Plaintiffs subsequently amended their complaint to remove ABC-NACO from the case. Plaintiffs' First Amended Complaint contains seven Counts. In Count I, Plaintiffs claim that Defendants violated section 10(b) of the Securities Exchange Act of 1934, as amended, 15 U.S.C. § 78(j)(b) and Rule 10b-5 promulgated thereunder, 17 C.F.R. § 240.10b-5 ("Section 10(b)"). In Counts II, III, and IV Plaintiffs claim that Defendants violated sections 12-F, 12-G, and 12-I, respectively, of the Illinois Securities Law of 1953, as amended, 815 ILCS 5/12(F), 12(G), & 12(I) ("the Illinois Securities Act"). In Count V, Plaintiffs assert that Defendants made fraudulent transfers. Count VI alleges a claim of Illinois common law fraud. Finally, in Count VII Plaintiffs claim that Defendants conspired to commit a common law fraud in the inducement. Defendants have moved to dismiss all of the Counts in Plaintiffs' complaint.

## LEGAL STANDARD

The purpose of a motion to dismiss pursuant to Rule 12(b)(6) is to test the sufficiency of the complaint, not to decide the merits of the case. Triad Assoc., Inc. v. Chicago Housing Auth., 892 F.2d 583, 586 (7th Cir. 1989). In ruling on a motion to dismiss, the court must first construe the complaint's allegations in the light most favorable to the plaintiff and all well-pleaded facts and allegations in the plaintiff's complaint must be taken as true. Bontkowski v. First Nat'l Bank of Cicero, 998 F.2d 459, 461 (7th Cir. 1993). The allegations of a complaint should not be dismissed for failure to state a claim "unless it appears beyond a doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." Conley v. Gibson, 355 U.S. 41, 45-46 (1957); see also Hartford Fire Ins. Co. v. California, 509 U.S. 764 (1993); Sherwin Manor Nursing Ctr., Inc. v. McAuliffe, 37 F.3d 1216, 1219 (7th Cir. 1994). Nonetheless, in order to

withstand a motion to dismiss, a complaint must allege facts sufficiently setting forth the essential elements of the cause of action. Lucien v. Preiner, 967 F.2d 1166, 1168 (7th Cir. 1992).

In reviewing a Rule 12(b)(6) motion to dismiss for failure to state a claim, the court is limited to the allegations contained in the pleadings themselves. Documents incorporated by reference into the pleadings and documents attached to the pleadings as exhibits are considered part of the pleadings for all purposes. Fed. R. Civ. P. 10(c). In addition, "documents that a defendant attaches to a motion to dismiss are considered a part of the pleadings if they are referred to in the plaintiff's complaint and are central to her claim." Venture Assoc. Corp. v. Zenith Data Sys. Corp., 987 F.2d 429, 431 (7th Cir. 1993). With these principles in mind, the court turns to the instant motion.

## DISCUSSION

We note at the outset that, after reviewing Defendants' papers, Plaintiffs have voluntarily agreed to dismiss Count V, their claim of fraudulent conveyance and Count VII, their claim of common law civil conspiracy. Accordingly, we do not address Defendants' arguments as to these Counts. We address here only Defendants' arguments in support of dismissing Counts I, II, III, IV, and VI.

We first address the arguments that apply only to Defendants Yoder, Duval, Drexler, Ergas, Martin, Peck, and Thompson. These Defendants argue that Plaintiffs' allegations as to them fail to meet the heightened pleading requirements of Federal Rules of Civil Procedure ("Rule 9(b)") and, therefore, they should be dismissed from the case. Rule 9(b) applies to Plaintiffs' securities fraud claims and common law claim of fraudulent inducement. Ackerman v. Northwestern Mut. Life Ins. Co., 172 F.3d 467, 471 (7th Cir. 1999); Sears v. Likens, 912 F.2d 889, 893 (7th Cir. 1990). Rule 9(b) mandates that, in all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity. Fed. R. Civ. Pro. 9(b). To do so, a plaintiff must plead the "who, what, when, where, and how: the first paragraph of a newspaper story." DiLeo v. Ernst

& Young, 901 F.2d 624, 627 (7th Cir. 1990). In a case such as this one involving multiple defendants, "Rule 9(b) prohibits 'lumping together' all the defendants under a general accusation . . . the rule requires that the complaint inform each defendant of the nature of his alleged participation in the fraud and specify which defendants were involved in what activity." Md. Staffing Servs., Inc. v. Manpower, Inc., 936 F. Supp. 1494, 1500 (E.D. Wis. 1996). To survive a motion to dismiss, a plaintiff must plead "which defendants said what to whom and when . . .." Ackerman, 172 F.3d at 471.

Applying these principles to Plaintiffs' complaint we find Plaintiffs' allegations as to Yoder, Duval, Drexler, Ergas, Martin, Peck, and Thompson insufficient. Plaintiff does not identify any affirmative misrepresentations made by any of these Defendants; only Defendants Seher, Makay, and Waite are individually identified as having made any statements to Plaintiffs. Indeed, there are no allegations that Duval, Drexler, Ergas, Martin, Peck, and Thompson ever came into contact with Plaintiffs. And although the complaint alleges that Yoder has dealt with Donovan, there are no allegations that Yoder made any affirmative misrepresentations in his dealings with Plaintiffs.

Nor do Plaintiffs sufficiently connect Yoder, Duval, Drexler, Ergas, Martin, Peck, or Thompson to any of the alleged omissions. Under all the causes of action Plaintiffs attempt to bring against Defendants, a defendant cannot be liable for an alleged omission unless the defendant has a duty to speak. See, e.g., Athey Products Corp. v. Harris Bank Roselle, 89 F3d 430, 435 (7th Cir. 1996); Wafra Leasing Corp. 1999-A-1 v. Prime Capital Corp., 192 F. Supp.2d 852, 867-68 (N.D. Ill. 2002); Security Center, Inc. v. Am. Tel. & Tel. Co., 1995 WL 307267, at *8 (N.D. Ill. May 16, 1995); DiLeo, 901 F.3d at 628; State Sec. Ins. Co. v. Frank B. Hall & Co., 630 N.E.2d 940, 944 (Ill. App. Ct. 1994). Specifically with regard to the Plaintiffs' federal securities claim, Rule 10b-5 proscribes omissions that render affirmative statements misleading; thus a defendant is liable only for those omissions that make his own speech misleading or deceptive. Tricontintental Indus., Ltd.

v. Anixter, 184 F. Supp.2d 786, 788 (N.D. Ill. 2002); Wafra, 192 F. Supp.2d at 867-68; Rowe v. Maremont Corp., 650 F. Supp. 1091, 1105 (N.D. Ill. 1986), aff'd 850 F.2d 1226 (7th Cir. 1988). A duty to speak may also arise where the law imposes special obligations, depending on the facts of the case. Tricontinental, 184 F. Supp. 2d at 788 (quoting Ziemba v. Cascade Int'l, Inc., 256 F.3d 1194, 1206 (11th Cir. 2001)). State law, not federal securities law, is the source of any duty in that case. Id.

Here, Defendants Yoder, Duval, Drexler, Ergas, Martin, Peck and Thompson are not specifically alleged to have made any statements that would be misleading unless they disclosed the alleged omissions to Plaintiffs - they are not alleged to have made any statements at all. Additionally, Plaintiffs do not allege that these Defendants otherwise had any duty to disclose the alleged omissions under state law. Therefore, Plaintiffs' fraud claims against Defendants Yoder, Duval, Drexler, Ergas, Martin, Peck and Thompson are insufficient. Plaintiffs' attempt to state viable claims against these Defendants by "lumping" all the Defendants together under conclusory allegations of fraud constitutes improper pleading under Rule 9(b).

Perhaps realizing that their allegations as to Defendants Duval, Drexler, Ergas, Martin, Peck, Yoder, and Thompson are insufficient to establish primary liability for fraud, Plaintiffs attempt to salvage their case as against these Defendants by claiming that these Defendants may be held liable under the securities laws as "controlling persons" of ABC-NACO. Plaintiffs cannot establish these Defendants' liability under § 10(b) by merely asserting that these Defendants are "control persons." See, e.g., Wright v. Ernst & Young LLP, 152 F.3d 169, 175 (2d Cir. 1998); Great Neck Capital Appreciation Inv. P'ship v. PricewaterhouseCoopers, L.L.P., 137 F. Supp. 2d 1114, 1120 (E.D. Wis. 2001). Plaintiffs may be attempting to state a claim for "control person" liability under § 20(a), 15 U.S.C. § 78t(a), for the case they cite Lindelow et al. v. Hill et al., No. 00 C 3727, 2001 WL 830956 (N.D. Ill. Jul. 20, 2001), discusses this theory of liability. Plaintiffs, however, make no mention of

§ 20(a) in their complaint. Nor do they expressly state in their response that they are really making such a claim. If their argument and cite to <u>Lindelow</u> is their way of indicating as much, it will not do. Plaintiffs cannot amend their complaint by means of their brief in opposition to Defendants' motion to dismiss. <u>Car Carriers, Inc. v. Ford Motor Co.</u>, 745 F.2d 1101, 1107 (7th Cir. 1984).

Even if they were doing as much, their allegations are inadequate. Plaintiffs do not allege any facts from which these Defendants could fairly be deduced as subject to "controlling person" liability under § 20(a) except for the fact that they were directors of ABC-NACO. The mere fact that Plaintiff alleges these Defendants are directors is not enough. <u>Feldman v. Motorola</u>, 1993 WL 497228, at *10-11 (N.D. Ill. Oct. 14, 1993) (dismissing § 20(a) claim that was based solely on Defendants' status as director); <u>Craig v. First American Capital Resources, Inc.</u>, 740 F. Supp. 530, 537 (N.D. Ill. 1990) (same); <u>see Harrison v. Dean Witter Reynolds, Inc.</u>, 974 F.2d 873, 881 (7th Cir. 1992) (setting forth test for finding "control person" liability). Moreover, such a claim would also fail because, as explained below, Plaintiffs cannot establish primary liability under § 10(b) on the part of Defendants Seher, Makary, and Waite. <u>Krieger v. Gast</u>, 1998 WL 677161, at *8 (N.D. Ill. Sept. 28, 1998). Because the allegations in Plaintiffs' complaint fail to allege a sufficient factual basis for any of Plaintiffs' claims against Defendants Yoder, Duval, Drexler, Ergas, Martin, Peck or Thompson, these Defendants are dismissed from this case.

Having dismissed the other Defendants from the case, we now address whether Plaintiffs can proceed against Defendants Seher, Makary, and Waite. Defendants make a number of arguments challenging the sufficiency of Plaintiffs' claims, but we address their challenge to Plaintiffs' ability to establish justifiable reliance first, because justifiable reliance is an element in all of Plaintiffs' remaining fraud claims. <u>Rissman</u>, 213 F.3d at 383 (7th Cir. 2000) (stating "without reliance

[plaintiff] has no claim under section 10(b) or Rule 10b-5"); <u>Foster v. Alex</u>, 572 N.E.2d 1242, 1245 (Ill. App. Ct. 1991) (instructing that Illinois Act requires plaintiff to establish element of reasonable reliance); <u>Trautman v. Knights of Columbus</u>, 460 N.E.2d 350, 352 (Ill. App. Ct. 1984) (stating reliance upon a representation is a necessary element of common law fraud in Illinois); <u>One-O-One Enters., Inc. v. Caruso</u>, 848 F.2d 1283, 1286 (D.C. Cir. 1988) (instructing that to state a claim for fraud or securities fraud plaintiffs allegations must indicate that plaintiff's reliance on the allegedly fraudulent representations was reasonable).

Defendants argue that Plaintiffs are precluded from arguing that their reliance on Defendants' alleged misrepresentations was reasonable because the Asset Purchase Agreement contains an integration clause. That clause provides, in pertinent part:

> This Agreement...contain[s] the entire agreement and understanding between the parties hereto with respect to the subject matter of this Agreement and supersede all prior agreements and understandings relating to such subject matter. Neither party shall be liable or bound to any other party in any manner by any representations, warranties or covenants relating to such subject matter except as specifically set forth herein

Am. Compl. Exh. C § 7.06. We agree with Defendants that this clause prohibits Plaintiffs from relying on oral promises not contained in the Asset Purchase Agreement. "Silence in a final agreement containing an integration clause – in the face of prior explicit representations – must be deemed an abandonment or excision of those earlier representations." <u>One-on-One</u>, 848 F.2d at 1286-87. By agreeing to this term in the Asset Purchase Agreement, Plaintiffs accepted that they would not be bound by any representations not found in the Asset Purchase Agreement. The alleged misrepresentations are not found in the Asset Purchase Agreement. Additionally, Plaintiffs agreed that such statements outside the four corners of the Asset Purchase Agreement would not form the

-11-

basis of any liability on the part of Defendants. Plaintiffs' agreement not to hold Defendants liable based on any statements outside the four corners of the agreement "negates the element of reasonable reliance." Am. Bankcard Int'l, Inc. v. Schlumberger Techs., Inc., 2001 WL 1465760, at *3 (N.D. Ill. Nov. 14, 2001). Because Plaintiffs cannot meet this necessary element of all their fraud claims, their claims must be dismissed. Much v. Pac. Mut. Life Ins. Co., 266 F.3d 637, 644 (7th Cir. 2001); Rissman v. Rissman, 213 F.3d 381 (7th Cir. 2000); Am. Bankcard Int'l, Inc., 2001 WL 1465760, at *3; One-on-One, 848 F.2d at 1286-87; Braunstein v. Benjamin Berman, Inc., 1990 WL 192547, at *8-10 (D.N.J. Sept. 12, 1990). Thus, we find that Plaintiffs cannot establish that they reasonable relied on the alleged misrepresentations made by Defendants Seher, Makary, and Waite.

Defendants further argue that Plaintiffs' claims, insofar as they are based on Defendants' statement that DDI would be a "golden egg" that would increase the price of ABC-NACO's stock, fail for the additional reason that this alleged statement is mere puffery and is, therefore, not actionable. We agree with Defendants. "Predictions and forecasts which are not of the type subject to objective verification are rarely actionable under § 10(b) and Rule 10b-5." Searles v. Glasser, 64 F.3d 1061, 1066 (7th Cir. 1995) (collecting cases). "Courts consistently hold that mere puffery and glowing representations of expected boom are not enough to state claims under the [Securities Act]." Medline Indus. Inc. Employee Profit Sharing & Retirement Trust v. Blunt, Ellis & Loewi, Inc., No. 89 C 4851, 1993 WL 13436, at *4 (N.D. Ill. Jan 21, 1993) (statement that investment was as "good as gold" was not actionable); see Anderson v. Abbott Labs., 140 F. Supp.2d 894, 904 (N.D. Ill. 2001); Fewel v. Kozak, 1999 WL 966447, at *3 (N.D. Ill. Oct. 19, 1999); In re Abbott Labs. Sec. Litig., 813 F. Supp. 1315, 1319 (N.D. Ill. 1992); In re Miller Indus., Inc. Sec. Litig., 12 F. Supp. 2d 1323, 1330-31 (N.D. Ga. 1998); Plevy v. Haggerty, 38 F. Supp. 2d 816, 827 (C.D. Cal. 1998).

Furthermore, such statements of opinion are not actionable under Illinois common law fraud. See, e.g., Thacker v. Menard, Inc., 105 F.3d 382, 386 (7th Cir. 1997). Therefore, we find that Defendants' alleged "golden egg" statement cannot be the basis of Plaintiffs' fraud claims for this additional reason.

## CONCLUSION

For the foregoing reasons, Defendants' motion to dismiss is granted and Plaintiffs' complaint is dismissed in its entirety.

Charles P. Kocoras
United States District Judge

Dated: __July 12, 2002__